# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

BEN LATHAM,

               Plaintiff,

     v.

JAMIE ACTON, *et al.*,

               Defendants.

Case No. 3:19-cv-00258-SLG

## ORDER RE MOTION TO DISMISS

Before the Court at Docket 31 is Defendants Municipality of Anchorage ("MOA"), Jamie Acton, Will Brown, and Sandy James's (collectively, "Defendants") Motion to Dismiss. Plaintiff Ben Latham filed an opposition at Docket 41. Defendants replied at Docket 50. Mr. Latham requested oral argument, however, the Court found that it was not necessary to the Court's determination and denied Mr. Latham's request.[1]

## BACKGROUND

Mr. Latham represents that he is a "mentally disabled Caucasian adult male with mental illness of Schizophrenia and Schizoaffective d/o."[2] In the First Amended Complaint ("FAC"), Mr. Latham alleges a number of grievances against

---

[1] *See* Docket 58 ("The Court has taken the Motion to Dismiss at Docket 31 under advisement, and finds that oral argument is not necessary to resolve the motion. For this reason, the Court denies Mr. Latham's motion for oral argument at Docket 39.").

[2] Docket 25 at 11.

Defendants in connection with the Anchorage People Mover program arising from (1) the lack of transportation access on the weekends between Anchorage and Eagle River, (2) denial of access to a reduced bus fare program ("Half Fare Program"), and (3) harassment by Anchorage People Mover employees.

## 1.  Access to Weekend Transportation

Mr. Latham alleges that the People Mover Bus "should go to Anchorage from Eagle River in the am Morning and return to Eagle River in the pm evening on Saturdays and Sundays," but that it does not.[3]  Mr. Latham asserts that the lack of weekend bus service denies him "employment consideration on the weekends,"[4] as well as access to the federal and state courthouses in Anchorage, which prevents him from participating in rehabilitative services.[5]  Mr. Latham is a participant in the Alaska Judicial System Anchorage Coordinated Resources Project and "must provide a urinalysis for the therapeutic Court on the weekends in Anchorage."[6]  Mr. Latham contends that, in contrast, residents of Anchorage who are able to use the People Mover bus service on the weekend have access to employment opportunities and to the courts, as well as other public services.[7]

---

[3] Docket 25 at 15.

[4] Docket 25 at 12.

[5] Docket 25 at 12.

[6] Docket 25 at 19.

[7] Docket 25 at 13, 19.

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 2 of 40

Case 3:19-cv-00258-SLG   Document 52   Filed 10/09/20   Page 2 of 40

Mr. Latham adds that this disparity in services exists even though Eagle River is part of the Municipality of Anchorage.[8] Mr. Latham alleges that the lack of weekend service was raised at an open meeting, but that the People Mover Committee "has failed to act and provide People Mover Bus services on the weekends to Eagle River Residents."[9]

### 2. Access to the Half Fare Bus Pass Program

Mr. Latham alleges that he was denied and continues to be denied a federally-subsidized People Mover half fare bus pass "because [he] is a heterosexual mentally disabled caucasian adult male with mental illnesses of Schizophrenia and Schizoaffective d/o . . . ."[10] The People Mover Half Fare Bus Pass Program requires the applicant to obtain a certification from the applicant's treating physician.[11] Mr. Latham perceives a discrepancy between the application's definition of eligibility for the program and the application's questions for a certifying physician.[12] The application form states:

> People with qualifying disabilities for this purpose are defined . . . as persons: 'who by reason of illness, injury, age, congenital malfunction, or other incapacity or temporary or permanent disability . . . cannot

---

[8] Docket 25 at 19.

[9] Docket 25 at 18. Mr. Latham also mentions that he has been denied AnchorRides bus service on weekends. Docket 25 at 12. However, Mr. Latham has not alleged sufficient facts related to the AnchorRides program to state a claim in connection with that program.

[10] Docket 25 at 11.

[11] Docket 41-4 at 1.

[12] Docket 41 at 6; Docket 25 at 18.

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 3 of 40

Case 3:19-cv-00258-SLG   Document 52   Filed 10/09/20   Page 3 of 40

use effectively, without special facilities, planning or design, mass transportation service or a mass transportation facility.'[13]

In the certification portion for the applicant's physician, it asks "[d]oes [the applicant's] condition affect their ability to ride the bus" and specifies "[i]f [y]es, please explain . . . [a]ddress need for accessible features, special facilities or planning."[14] Mr. Latham asserts that his psychiatrist Merrie Rollins misconstrued the question due to ambiguous wording and answered in the negative.[15]

On July 29, 2019, Mr. Latham alleges that he went to the Anchorage Municipality People Mover Bus Transit Center and was refused a replacement reduced pass by Defendants Sandy James and Will Brown.[16] Mr. Brown informed Mr. Latham that his doctor had made an error in completing his disability application and that Mr. Latham would have to wait six months before refiling the application.[17] Mr. Latham alleges that later the same day, Ms. James told him that,

---

[13] Docket 41-4 at 1. The Court has considered the Half Fare Program application form, finding it incorporated by reference. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters or judicial notice—without converting the motion to dismiss into a motion for summary judgment. Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."). Although Mr. Latham did not attach the application form to his pleading, it forms the basis of several of Mr. Latham's claims, and he refers to the application and its language throughout the FAC. The application form is attached to Mr. Latham's opposition to Defendants' motion to dismiss. *See* Docket 41-4.

[14] Docket 41-4 at 5. *See also* Docket 25 at 18.

[15] Docket 25 at 18; *see also* Docket 41-1 at 2.

[16] Docket 25 at 14.

[17] Docket 25 at 14–15 ("Ben Latham was told by Will Brown that Ben Latham's Doctor filed [sic] out his Disability Application wrong and Ben Latham was told by . . . Will Brown that Ben Latham

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 4 of 40

Case 3:19-cv-00258-SLG   Document 52   Filed 10/09/20   Page 4 of 40

in fact, his form would be reprocessed as soon as Mr. Latham's doctor submitted the certification.[18]  Mr. Latham further alleges that Ms. James later denied him an application on September 17, 2019.[19]  Mr. Latham adds that Defendant Jamie Acton "refuse[d] to accept calls from the Public" and denied the public their legal protections "by having a ADA Disability form that is misleading . . . ."[20]  Lastly, Mr. Latham adds that he attended a People Mover open meeting in July 2019 on information that he would be given a reduced fare pass if he attended, but he was denied a pass at the meeting.[21]

### 3.    Harassment by People Mover Employees

Lastly, Mr. Latham alleges that employees of People Mover have harassed him.[22]  Specifically, he alleges that on September 18, 2019, he received two harassing phone calls from Mr. Brown, who Mr. Latham contends had refused to hear his complaint that he had been denied a reduced fare pass by Ms. James.[23]

---

had to wait Six Months prior to filing a New Application.").

[18] Docket 25 at 15.

[19] Docket 25 at 16.

[20] Docket 25 at 16–17.

[21] Docket 25 at 15–16.

[22] Docket 25 at 14.  In the FAC, Mr. Latham seeks an injunction against the Anchorage Municipality People Mover and its employees "from further Harassment in the second degree," citing to AS 11.61.120.  Because Mr. Latham cannot, on his own, pursue criminal law claims, the Court considers Mr. Latham's harassment claims under the ADA, RA, and the other civil rights statutes he relies on in the FAC.

[23] Docket 25 at 16.

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 5 of 40

Case 3:19-cv-00258-SLG   Document 52   Filed 10/09/20   Page 5 of 40

On September 24, 2019, Mr. Latham commenced this action against the Municipality of Anchorage, the Director of People Mover Jamie Acton, People Mover Supervisor Will Brown, and People Mover Disability Supervisor and Customer Service Representative Sandy James.[24]

Mr. Latham asserts the following counts against Defendants: (1) violation of the Civil Rights Act of 1964, 1990 (42 U.S.C. §§ 12101-12213); (2) violation of Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d-e-4); (3) violation of the Americans with Disabilities Act of 2008 ("ADA") (110–325) (S-3406); (4) violation of the ADA (110–325) (42 U.S.C. 12101–12213); (5) violation of Title I of the Workforce Investment Act of 1998 (29 U.S.C. 2801); (6) violation of the Employment by Federal Government (42 U.S.C. 2000 e-16); (7) violation of the ADA (42 U.S.C. 2000 e-5); (8) violation of the ADA of 1990; (9) violation of the Law of Employment Discrimination (28 C.F.R. 35.140) and (29 C.F.R. 1630); (10) violation of the Rehabilitation Act of 1973 (29 U.S.C. § 701(a)(D)); (11) violation of Title V ADA Civil Rights Act of 1974; (12) violation of 28 C.F.R. (35.102); (13) violation of 29 U.S.C. § 795J; (14) violation of 42 U.S.C. § 1981(a); and (15) violation of 42 U.S.C. § 1983.[25] Mr. Latham also asserts violations of his due process and equal protection rights under the 14th Amendment of the U.S.

---

[24] Docket 1. Mr. Latham names the individual defendants in their official and personal capacities. He also alleges that Ms. Acton and Mr. Brown are liable under the doctrine of respondeat superior for their employees' actions. Docket 25 at 6–9.

[25] Docket 25 at 20–30.

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 6 of 40

Case 3:19-cv-00258-SLG   Document 52   Filed 10/09/20   Page 6 of 40

Constitution, as well as under Article 1, Sections 1 and 7 of the Alaska Constitution.[26]

Mr. Latham seeks a declaration that his rights are being violated by Defendants for so long as there is no weekend bus service to Eagle River, and because the People Mover application form denies disabled persons a Half Fare bus pass.[27] Mr. Latham also seeks an order that the MOA "provide at least one . . . Bus Travel from Eagle River to Anchorage on Saturdays and Sundays after 6:00am and . . . at least one . . . from Anchorage to Eagle River after 5:00pm on Saturdays and Sundays of each week in the calendar month, 12 months a year."[28] Mr. Latham seeks an award of punitive damages in the amount of $100,000 and compensatory damages in the same amount.[29] Mr. Latham seeks a permanent injunction against the Anchorage Municipality People Mover and its employees from further harassment.[30] Finally, Mr. Latham seeks an award of attorney fees and paralegal fees, and any other relief the Court deems just.[31]

---

[26] Docket 25 at 20–30.

[27] Docket 25 at 30–31.

[28] Docket 25 at 31.

[29] Docket 25 at 32.

[30] Docket 25 at 32.

[31] Docket 25 at 33.

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 7 of 40

Case 3:19-cv-00258-SLG   Document 52   Filed 10/09/20   Page 7 of 40

On February 18, 2020, Defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted or for "nam[ing] issues which would violate the separation of powers."[32]

## LEGAL STANDARD

### I.    Jurisdiction

This Court has jurisdiction over Mr. Latham's federal civil rights claims pursuant to 28 U.S.C. § 1331, which provides for federal question jurisdiction, and has supplemental jurisdiction over Mr. Latham's state law claims pursuant to 28 U.S.C. § 1367.

### II.    Motion to Dismiss

When reviewing a Rule 12(b)(6) motion, a court considers only the pleadings and documents incorporated into the pleadings by reference, as well as matters on which a court may take judicial notice.[33]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[34]  A claim is plausible on its face "when the

---

[32] Docket 31 at 2.

[33] *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).  Along with his opposition to the motion to dismiss, Mr. Latham has included two unsigned affidavits.  *See* Docket 41-1 (Aff. Ben Latham) and Docket 41-2 (Aff. Maria Rollins).  As the Court has previously instructed the parties, "[w]hen reviewing a Rule 12(b)(6) motion, a court considers only the complaint and those documents incorporated into the complaint by reference, as well as matters on which a court may take judicial notice."  Docket 38 at 2; Docket 51 at 2.  For this reason, the Court will not consider the unsigned affidavits in deciding the pending motion.

[34] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 8 of 40

Case 3:19-cv-00258-SLG   Document 52   Filed 10/09/20   Page 8 of 40

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[35] Thus, there must be "more than a sheer possibility that a defendant has acted unlawfully."[36] A court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."[37]

Moreover, when granting a motion to dismiss, a court is generally required to grant the plaintiff leave to amend, unless amendment would be futile.[38] In determining whether amendment would be futile, a court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint."[39]

## DISCUSSION

Because Mr. Latham does not always specify the facts underlying each of his claims, the Court will consider each claim in the context of all the facts alleged in the FAC.[40]

---

[35] *Id.* (citing *Twombly*, 550 U.S. at 556).

[36] *Id.*

[37] *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008).

[38] *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

[39] *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990).

[40] This Court liberally construes Mr. Latham's pleadings, as a *pro se* litigant. *See Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). The Ninth Circuit has instructed courts "where the petitioner is *pro se*, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). But a liberal construction of a pleading "may not supply essential elements of the claim that were not initially pled." *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992), *as amended*

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 9 of 40

Case 3:19-cv-00258-SLG   Document 52   Filed 10/09/20   Page 9 of 40

## 1. Americans with Disabilities Act and Rehabilitation Act

Mr. Latham alleges multiple counts under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). In addition to Count 1 alleging violation of 42 U.S.C. §§ 12101-12213,[41] Counts 4 and 8 allege violations of the Americans with Disabilities Act of 1990 (which includes 42 U.S.C. §§ 12101-12213) and Count 3 alleges violations of the American with Disabilities Act of 2008, which amended the ADA of 1990 ("ADAA").[42] Mr. Latham also alleges violations of several regulations implementing the ADA including 28 C.F.R. § 35.140[43] (Department of Justice ("DOJ") regulation applying Title II of the ADA to employment) and 29 C.F.R. § 1630 (Equal Employment Opportunity Commission guidance on Title I of

_____

(quoting *Ivey v. Board of Regents of Univ. of Alaska*, 643 F.3d 266, 268 (9th Cir. 1982)). Mr. Latham's pleadings must still comply with Federal Rule of Civil Procedure 8, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief," and with the requirements of *Twombly* and *Iqbal* that pleadings "state a claim that is plausible on its face" and "plausibly suggest an entitlement to relief." *Twombly*, 550 U.S. at 570 and *Iqbal*, 556 U.S. at 662.

[41] In Count 1, Mr. Latham asserts a violation of the Civil Rights Act of 1964 but cites the provision of the U.S. Code corresponding to the ADA. Accordingly, the Court construes Count 1 as an ADA claim. Mr. Latham brought other counts pursuant to the Civil Rights Act of 1964.

[42] Docket 25 at 22–23, 25. Mr. Latham also alleges violations of Title V of the ADA in Count 11, but simultaneously references the Civil Rights Act of 1974. Because Title V of the Civil Rights Act of 1964 provided for the expansion of the Civil Rights Commission, the Court infers that this reference was an inadvertent error and construes the claim as referring to Title V of the ADA.

[43] "As authorized by the statute, 42 U.S.C. § 12134, the United States Attorney General has promulgated a vast body of regulations implementing Title II. The regulations flesh out public entities' statutory obligations with more specificity, but a public entity may violate the ADA even if no regulation expressly proscribes its particular conduct." *Cohen v. City of Culver City*, 754 F.3d 690, 695 (9th Cir. 2014). 41 U.S.C. § 12134, however, prohibits the DOJ from making rules that "include any matter within the scope of the authority of the Secretary of Transportation under section 12143." *Boose v. Tri-County Metro. Transp. Dist. of Or.*, 587 F.3d 997, 1001 (9th Cir. 2009). The Secretary of Transportation has the sole authority to "issue final regulations to carry out this section." 42 U.S.C. § 12143(b).

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 10 of 40

Case 3:19-cv-00258-SLG   Document 52   Filed 10/09/20   Page 10 of 40

the ADA) in Count 9, and 28 C.F.R. § 35.102 (DOJ regulation applying Title II to all services, programs, and activities provided by public entities, but carving out public transportation services covered by 42 U.S.C. § 12141 *et seq.*) in Count 12. Lastly, Mr. Latham alleges that Defendants violated the Rehabilitation Act ("RA") in Counts 10 and 13.[44]

Defendants move to dismiss all of Mr. Latham's ADA and RA claims for failure to state a claim. First, Defendants urge the Court to dismiss the claims against the individual defendants Jamie Acton, Will Brown, and Sandy James, on the basis that there is no private right of action against individuals available under Title II of the ADA or under the RA.[45] Next, Defendants maintain that Title II requires a plaintiff to "prove that the exclusion from the participation in the program was 'solely by reason of disability,'"[46] and that Mr. Latham has "not asserted that he was denied weekend service based on his disability," or that he was denied the Half Fare bus pass by reason of his disability.[47] Defendants analogize to the facts in *Weinreich v. Los Angeles County Metropolitan Transportation Authority.*[48] In

---

[44] Count 13 further specifies a violation of 29 U.S.C. § 795j. Docket 25 at 28.

[45] Docket 31 at 8–9 (identifying unpublished decisions *Burgess v. Carmichael*, 37 F. Appx. 288 (9th Cir. 2001) and *Young v. Lehaman*, 171 F. Appx. 625 (9th Cir. 2006)).

[46] Docket 31 at 11 (quoting *Does v. Chandler*, 83 F.3d 1150, 1154–55 (9th Cir. 1996)). Defendants add that modifications of a public service are not required if the "modification would fundamentally alter the nature of the service or program." Docket 31 at 11 (quoting 28 C.F.R. § 35.130(b)(7)).

[47] Docket 31 at 12–14.

[48] 114 F.3d 976 (9th Cir. 1997).

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 11 of 40

Case 3:19-cv-00258-SLG   Document 52   Filed 10/09/20   Page 11 of 40

*Weinreich*, the plaintiff alleged that a transit authority discriminated against him when it refused to renew his eligibility for a reduced fare program for elderly and disabled patrons. The plaintiff had qualified for the program years earlier after a doctor certified that he suffered permanently disabling chronic back pain. Thereafter, the transit authority promulgated a rule requiring recertification of the disability by a physician every three years; the plaintiff sought an exemption on the basis that he could not afford to pay a private doctor to recertify him. The transit authority refused to grant him an exemption, and because the plaintiff was lacking the proper documentation, denied him access to the program.[49]

The Ninth Circuit affirmed the district court's judgment that the transit authority did not discriminate against the plaintiff under the ADA or RA. It reasoned that the transit authority "had no obligation under the ADA or the Rehabilitation Act to 'reasonably accommodate' Weinreich's financial inability to provide updated recertification of his disability."[50] The Ninth Circuit emphasized that the plaintiff "has not shown that his exclusion from the Reduced Fare Program was due to his disability," as required under the ADA and the RA; rather, "his exclusion was based on the possibility that he does *not* have a qualifying disability."[51]

---

[49] *Id.* at 978.

[50] *Id.*

[51] *Id.* at 979.

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 12 of 40

Defendants contend that Mr. Latham—like the plaintiff in *Weinreich*—was denied a reduced fare bus pass "based on how his health care provider filled out the form," and not based on his disability.[52] Defendants add that Mr. Latham does not allege that the lack of bus service to Eagle River was based on his disability and therefore that he has failed to state a claim under the RA.[53] Lastly, Defendants contend that Mr. Latham's claims pursuant to 28 C.F.R. § 35.140 and 29 C.F.R. § 1630, which relate to employment, should be dismissed because Mr. Latham has not alleged that he was discriminated against as an employee.[54]

In his opposition, Mr. Latham emphasizes the MOA's policy of nondiscriminatory treatment of individuals with disabilities and its commitment to compliance with the ADA.[55] He does not otherwise address Defendants' legal arguments.

The RA and the ADA prohibit discrimination against individuals on the basis of disability. Section 504 of the Rehabilitation Act provides, in part:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.[56]

---

[52] Docket 31 at 13.

[53] Docket 31 at 12.

[54] Docket 31 at 31.

[55] Docket 41 at 5.

[56] 29 U.S.C. § 794(a).

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 13 of 40

Case 3:19-cv-00258-SLG   Document 52   Filed 10/09/20   Page 13 of 40

Similarly, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity."[57]   "Title II 'extends the anti-discrimination prohibition embodied in section 504 [of the Rehabilitation Act of 1973] to all actions of state and local governments.'"[58] "Title II emphasizes 'program access,' meaning that a public entity's programs and services . . . must be equally accessible to disabled persons.'"[59]

The Ninth Circuit has explained that '[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act.'"[60]   To state a claim under Section 504 of the Rehabilitation Act, a plaintiff must show "(1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance."[61]

---

[57] 42 U.S.C. § 12132.

[58] *City of Los Angeles v. AECOM Servs.,* 854 F.3d 1149, 1153 (9th Cir. 2017) (quoting H.R. Rep. No. 101-485(II), at 84 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 367) (alterations in original)).

[59] *City of Culver*, 754 F.3d at 694.  "Part A of Title II deals with public entities in general, [and] Part B deals with public transportation."  *Boose v. Tri-County Metro. Transp. Dist. of Or.,* 587 F.3d 997, 1001 (9th Cir. 2009).

[60] *AECOM Servs.*, 854 F.3d at 1154 (quoting *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) (alteration in original)).  *See also Duffy v. Riveland*, 98 F.3d 447, 455 (9th Cir. 1996) ("We . . . adopt the relevant factors established by this circuit in analyzing an RA claim to [plaintiff's] ADA claim . . . .").

[61] *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001).

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 14 of 40

Case 3:19-cv-00258-SLG   Document 52   Filed 10/09/20   Page 14 of 40

Likewise "[t]o prevail under Title II, the plaintiff must show that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) this exclusion, denial, or discrimination was by reason of his disability."[62]  Under each statute, a plaintiff must show that a specific entity discriminated against him or denied him services to which he is otherwise entitled *because of* his disability.[63]  "To recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant."[64]

As a threshold issue, the Court agrees with the district courts in this Circuit that have concluded there is no private right of action available against individuals under Title II of the ADA or under the RA.[65]  As such, the Court will dismiss with prejudice Mr. Latham's Title II and ADA claims against individual Defendants

_____

[62] *City of Culver City*, 754 F.3d at 694.

[63] *See Wormuth v. Lammersville Union Sch. Dist.*, 305 F. Supp. 3d 1108, 1124 (E.D. Cal. 2018) ("A discrimination claim under either statute requires plaintiff to show that, although he is otherwise entitled to a specific entity's services or programs or activities, that entity discriminated against him or denied him services based on his qualifying disability.") (citing *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1063 (9th Cir. 2005) and *Vinson v. Thomas*, 288 F.3d 1145, 1152 n.7 (9th Cir. 2002)).

[64] *Duvall*, 260 F.3d at 1138 (citing *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998)).

[65] *See, e.g., Rasuwl v. Hays*, Case No. 19-cv-1832-MMA (WVG), 2019 WL 5578227 (S.D. Cal. Oct. 29, 2019) (holding that "Plaintiff may not pursue an ADA claim against any of the individually named Defendants . . . because there is no individual liability under Title II.");  *D.K. ex rel G.M. v. Solano Cty. Office of Educ.*, Case No. 2:08-cv-00534-MCE-DAD, 2008 WL 5114965 (E.D. Cal. Dec. 2, 2008) ("While section 504 creates a private right of action against the State, a plaintiff cannot bring an action against a State official in her individual capacity.").

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 15 of 40

Case 3:19-cv-00258-SLG   Document 52   Filed 10/09/20   Page 15 of 40

Jamie Acton, Will Brown, and Sandy James. The Court will also dismiss with prejudice Mr. Latham's claims arising under 28 C.F.R. § 35.140 and 29 C.F.R. § 1630, as Mr. Latham has not alleged that he is, or has been, in an employment relationship with Defendants.

The Court turns to the remaining Title II and RA claims against the MOA. The parties do not dispute that Mr. Latham has a disability within the meaning of the ADA and RA. At issue is whether Mr. Latham has plausibly alleged facts that, if proven, would establish (1) that he is otherwise qualified for the People Mover services and (2) that he is being denied those services solely because of his disability.

### Half Fare Program

The Half Fare Program is not available to the general public, but only to certain qualifying individuals defined as those who "by reason of . . . disability . . . cannot use effectively, without special facilities, planning, or design, mass transportation service."[66] The program requires that the applicant's treating physician certify that the applicant is eligible for the program, which includes certifying that the applicant's condition affects their ability to ride the bus.[67] Nowhere in the FAC does Mr. Latham allege that his disability affects his ability to ride the bus or that he cannot effectively use mass transportation without special

---

[66] Docket 41-4 at 1.

[67] Docket 41-4 at 5.

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 16 of 40

Case 3:19-cv-00258-SLG   Document 52   Filed 10/09/20   Page 16 of 40

facilities, planning, or design.  Indeed, Mr. Latham contends that the application form states that "planning is *not* required to be granted a Disability Reduced fa[re] bus pass."[68]  The Court disagrees; contrary to Mr. Latham's understanding, the application for the Half Fare Program clearly outlines its eligibility requirements, which include certifications by both the applicant and the applicant's physician that due to the applicant's disability, he or she cannot effectively use mass transportation without special planning or other accommodations.[69]

For instance, the physician certification form states: "Not all disabilities qualify an individual to be eligible for the PEOPLE MOVER Half Fare Program. Income or ability to pay are not factors in determining eligibility.  The qualifying disability MUST INHIBIT the applicant's ability to EFFECTIVELY use mass transportation WITHOUT special facilities, planning, or design."[70]  Mr. Latham seemingly reads the clause "without special facilities, planning, or design" in isolation from the rest of the sentence, concluding that the application "states that planning is not required to be granted a Disability Reduced fa[re] pass."[71] However, read in context, the application form clearly indicates that a disability qualifies for the program only if it inhibits the applicant's ability to use mass transit

---

[68] Docket 41 at 11 (emphasis added).

[69] Docket 41-4 at 2, 5.

[70] Docket 41-4 at 5.

[71] Docket 41 at 11.

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 17 of 40

Case 3:19-cv-00258-SLG   Document 52   Filed 10/09/20   Page 17 of 40

without any additional assistance, i.e., qualifying individuals are those who require special facilities, planning, or design, to use mass transit because of their disability.

Accordingly, the Court finds that Mr. Latham is not "otherwise qualified" for the program, as required to state a claim under the ADA or RA; by its express terms, the Half Fare Program provides discount fare benefits to a limited category of persons to which Mr. Latham has not alleged he belongs.[72]

Moreover, Mr. Latham fails to allege that he was denied access to the program as a result of his disability; the factual allegations in the FAC indicate that he was denied access to the program because his physician did not certify that he qualified for the program. Although his physician certified that Mr. Latham does have a disability, the physician did not certify that it impaired Mr. Latham's ability to use mass transportation without "special facilities, planning or design" as required for eligibility to the program.[73] Mr. Latham contends that his physician was misled by the form's ambiguous language but he does not allege that he was excluded from the program on the basis of his disability. To the contrary, like the plaintiff in *Weinreich*, "his exclusion was based on his failure to provide . . . certification that he has a qualifying disability."[74]

---

[72] *See, e.g., Marsh v. Skinner,* 922 F.2d 112, 117 (2d Cir. 1990) (affirming dismissal of Section 504 claim where plaintiff had a disability but did not meet the terms of the half-fare program).

[73] Docket 41 at 11.

[74] *Weinreich v. L.A. Cty. Metro. Transp. Auth.*, 114 F.3d 976, 979 (9th Cir. 1997); *see also Murry v. City of Detroit*, Case No. 11-11498, 2012 WL 1048555, at *3 (E.D. Mich. March 28, 2012) (concluding that the plaintiff was excluded from a reduced fare program "not because he was disabled, but because he failed to provide the required documentation from his doctor

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 18 of 40

Case 3:19-cv-00258-SLG   Document 52   Filed 10/09/20   Page 18 of 40

Finally, in an effort to construe the FAC liberally, the Court considers whether Mr. Latham's allegations state a claim that he was being discriminated against as a result of his specific disability, as was the case in *Hamlyn v. Rock Island County*.[75]  In *Hamlyn*, the plaintiff had AIDS, which is a qualifying disability under the ADA and RA.  Although the plaintiff met the eligibility requirements of the reduced fare program because he had "significant difficulty walking more than one block; significant difficulty boarding or alighting from a standard bus; significant difficulty standing in a moving vehicle," he was excluded from the program *because* he had AIDS.[76]  The district court concluded that the program violated the ADA and RA because it "treats other disabled persons without AIDS, who are otherwise similarly situated, more favorably than those persons with AIDS" without any rationale.[77]  Here, in contrast, Mr. Latham is not similarly situated to individuals with other disabilities who are given access to the program because he does not allege that his disability impairs his ability to effectively use mass transportation.

The Court finds that any attempt at amending the complaint to try to state a Title II or RA claim with respect to the Half Fare Program would contradict the

---

establishing his disability" and concluding that his exclusion was proper where it "was based on his failure to show eligibility").

[75] 986 F. Supp. 1126 (C.D. Ill. 1997).

[76] *Id.* at 1130.  The application form specified that AIDS was not a qualifying disability for the program.  *Id.* at 1130–31.

[77] *Id.* at 1131.

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 19 of 40

Case 3:19-cv-00258-SLG   Document 52   Filed 10/09/20   Page 19 of 40

original allegations and would be futile.  Based on the foregoing, the Court will dismiss with prejudice Mr. Latham's Title II and RA claims arising from the Half Fare Program.[78]

### Weekend Service

Next, the Court turns to Mr. Latham's ADA and RA claims arising from the lack of weekend service from Eagle River to Anchorage.  Again, while Mr. Latham properly alleges that he has a disability, he fails to allege the other required elements of an RA or Title II claim.  Most notably, Mr. Latham has failed to allege that he is being denied access to weekend service as a result of his disability.  Indeed, it is not evident to the Court that Mr. Latham has alleged that he is being denied access to a program at all, in light of the fact that there is no weekend bus service for anyone between Eagle River and Anchorage.  Accordingly, the Court will dismiss Mr. Latham's ADA and RA claims arising from the lack of weekend service for failure to state a claim.[79]  The Court finds that any attempt at amending the complaint to try to state such a claim would contradict the original allegations

---

[78] The Court also dismisses with prejudice Mr. Latham's claims under 28 C.F.R. § 35.102, the DOJ regulation applying Title II to all public programs (Count 1) and the claims brought pursuant to 29 U.S.C. § 795j, a provision of the RA relating to employment opportunities (Count 13).

[79] The Court is cognizant that the Ninth Circuit recognizes "that facially neutral policies may violate the ADA when such policies unduly burden disabled persons, even when such policies are consistently enforced."  *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004).  But this is not an instance where "individuals with disabilities are denied 'meaningful access' to [government]-provided programs, services, and activities" as a result of "their unique needs, while others would retain access to the same class of services."  *Cmts. Actively Living Indep. & Free v. City of Los Angeles*, Case No. CV 09–0287 CBM (RZx), 2011 WL 4595993, at *12 (C.D. Cal. Feb. 10, 2011).

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 20 of 40

Case 3:19-cv-00258-SLG   Document 52   Filed 10/09/20   Page 20 of 40

and would be futile. Therefore, Mr. Latham's Title II and RA claims arising from the lack of weekend service between Anchorage and Eagle River will be dismissed with prejudice.[80]

### **Harassment**

The Court evaluates Mr. Latham's ADA/RA claims that he was harassed by members of the People Mover staff; these claims appear based on two phone calls made to him in September 2019.[81]

The Court concludes that, even assuming there is a cognizable cause of action for disability harassment under Title II of the ADA or the RA, Mr. Latham has not alleged one.[82] The Court finds that two alleged phone calls do not rise to the level of actionable harassment.[83] Moreover, Mr. Latham has not alleged any

---

[80] The Court's dismissal with prejudice does not affect any ADA/RA claims Mr. Latham may seek to bring in a separate action regarding the AnchorRides program. As discussed above, Mr. Latham did not allege sufficient facts in this case relating to that program for the Court to evaluate any such claims.

[81] *See* Docket 25 at 16 ("On September 18th 2019 Plaintiff Ben Latham received two Harassment phone Call from the Anchorage Municipality People Mover Employee Will Brown Supervisor of People mover downtown location . . . ."). Having dismissed any claims under Title II or the RA against the individual Defendants, Mr. Latham's remaining claim of harassment against the MOA must be evaluated under the doctrine of respondeat superior. *See, e.g., Duvall*, 260 F.3d at 1141 ("When a plaintiff brings a direct suit under either the Rehabilitation Act or Title II of the ADA against a municipality . . . the public entity is liable for the vicarious acts of its employees.").

[82] The Ninth Circuit has not considered whether a standalone disability-based harassment claim exists under Title II of the ADA; however, it has declined to decide whether a disability-based hostile work environment claim exists under the ADA. *See Brown v. City of Tucson*, 336 F.3d 1181, 1190 (9th Cir. 2003); *see also Smith v. Harrington*, Case No. C 12—03533 LB, 2013 WL 132465, at *4 n.4 (N.D. Cal. Jan. 9, 2013) ("Although the Ninth Circuit has not determined whether a plaintiff may bring a "disability harassment" or hostile work environment claim under the ADA, other circuits have held that a plaintiff may bring one.) (collecting cases).

[83] *See, e.g., Casas v. City of El Paso*, 502 F. Supp. 2d 542, 549 (W.D. Tex. 2007) (concluding

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 21 of 40

facts that suggest the harassment occurred because of his disability, which is a key element of a claim under Title II of the ADA or the RA.[84] Lastly, to the extent that Mr. Latham is seeking damages, he has not alleged intentional discrimination as required to recover monetary damages under Title II of the ADA or the RA.[85] Therefore, the Court will dismiss Mr. Latham's claims under Title II and the RA

---

that "seventeen incidents of rudeness during a two-year-plus period of bus trips, at a rate of fifteen bus trips per week, does not constitute the kind of severe or pervasive harassment required for recovery for disability-based harassment").

Although the Ninth Circuit has not addressed harassment under Title II or the RA, and therefore not provided a definition for what amounts to harassment, it has provided guidance in other contexts. For instance, to state a claim under Title VII, a plaintiff must allege harassing conduct that is severe or pervasive enough to "alter the conditions of employment and create an abusive working environment." *See Zetwick v. Cty. of Yolo*, 850 F.3d 436, 442 (9th Cir. 2017). Similarly, to state a Title IX hostile environment claim, a plaintiff must allege that harassment because of sex was "so severe, pervasive, and objectively offensive" that it deprives the plaintiff of access to educational opportunities or benefits. *Parents for Privacy v. Barr*, 949 F.3d 1210, 1226 (9th Cir. 2020) (citing *Davis ex rel LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999). *See also Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 686–87 (9th Cir. 2017) (applying legal principles for a Title VII dispute to a claim under 42 U.S.C. § 1981, including "severe or pervasive" standard for workplace harassment). *See also* AS 11.61.120 (listing circumstances amounting to harassment in the second degree, including "repeated telephone calls at extremely inconvenient hours"). .

[84] *See Weinreich v. L.A. Cty. Metro. Transpo. Auth.*, 114 F.3d 976, 978–79 (9th Cir. 1997) (quoting *Does 1-5 v. Chandler*, 83 F.3d 1150, 1155 (9th Cir. 1996) ("[A] plaintiff proceeding under Title II of the ADA must, similar to a Section 504 plaintiff, prove that the exclusion from participation in the program was 'solely by reason of disability.'"); *see also Kilgore v. Tulare Cty.*, Case No. CV F 10-0031 LJO BAM, 2012 WL 483085, at *25 (E.D. Cal. Feb. 14, 2012) (finding that "[t]he record does not reveal facts to infer severe and pervasive harassment arising from [the plaintiff's] disability").

Where courts have recognized a disability harassment claim in the workplace, they have held that one of the elements of the claim is "that the harassment complained of was based on [a plaintiff's] disability or disabilities." *Flowers v. S. Reg'l Physician Servs., Inc.*, 247 F.3d 229, 235 (5th Cir. 2001); *see also Roberts v. Dimension Aviation*, 319 F. Supp. 2d 985, 988 (D. Ariz. 2004) ("The Court assumes here, without so holding, that a cause of action for harassment exists under the ADA. To succeed on a claim of disability-based harassment under the ADA, Plaintiff must prove that . . . [the] harassment complained of was based on his disability or disabilities.").

[85] *Duvall*, 260 F.3d at 1138.

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 22 of 40

Case 3:19-cv-00258-SLG   Document 52   Filed 10/09/20   Page 22 of 40

against the MOA arising from the alleged harassment. The Court finds that any attempt at amending the complaint to try to state such a claim would contradict the original allegations and would be futile. Therefore, the dismissal of these counts will be with prejudice.

Next, the Court considers whether Mr. Latham has stated a claim arising from his allegations of harassment under Title V of the ADA. Title V provides in relevant part that:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this Act.[86]

To state a claim under this provision of the ADA, Mr. Latham must at a minimum identify a right to which he was entitled under the ADA and allege that Defendants interfered with it in some way.[87] As discussed above, Mr. Latham has failed to state a claim that he was entitled to the Half Fare Program or to weekend bus service between Eagle River and Anchorage under the ADA. Accordingly, any claim that the People Mover employees' alleged harassment interfered with these rights necessarily fails. For this reason, the Court will dismiss Count 11 of the FAC

---

[86] 42 U.S.C. § 12203(b).

[87] *See Annenberg v. Clark Cty. Sch. Dist.*, 818 Fed. Appx. 674, 678 (9th Cir. 2020) ("In order to state a claim for interference, [plaintiff] must, at a minimum, identify a right to which she was entitled under the ADA and allege that the [government] interfered with that right in some way. . . .").

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 23 of 40

Case 3:19-cv-00258-SLG   Document 52   Filed 10/09/20   Page 23 of 40

for failure to state a claim. The Court finds that any attempt at amending the complaint to try to state a claim upon which relief could be granted would contradict the original allegations and would be futile. Therefore, the dismissal of Count 11 will be with prejudice.

## IV. Title VI of the Civil Rights Act

In Count 2, Mr. Latham alleges that Defendants violated Title VI of the Civil Rights Act of 1964.[88] Defendants acknowledge that Title VI prohibits discrimination or exclusion from programs or activities receiving federal assistance on the basis of race, color, or national origin and "applies to the entire state or local institution that has a federally funded program or activity," including public transportation.[89] But Defendants move to dismiss the weekend bus service claim on the basis that "Latham never alleges that only Caucasians are denied bus service on the weekends" or "that the lack of bus service is in any way related to race, color or national origin of the ridership."[90] As to the Half Fare Program, Defendants assert that Mr. Latham "fails to allege that only non-Caucasians are granted Half Fare passes or that only Caucasians are denied Half Fare passes."[91] Defendants further contend that Mr. Latham fails to allege any type of intentional

---

[88] 42 U.S.C. § 2000d *et seq.*

[89] Docket 31 at 26 (citing *Schroeder v. City of Chicago*, 927 F.2d 957, 962 (7th Cir. 1991)) and Docket 31 at 28.

[90] Docket 31 at 29.

[91] Docket 31 at 30.

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 24 of 40

discrimination based on race, color, or national origin as required to state a claim under Title VI.[92]

Mr. Latham's opposition emphasizes the MOA Public Transportation Department's Title VI policy statement.[93]

Mr. Latham has not alleged any facts indicating that he did not receive a Half Fare pass as a result of racial bias; indeed, he has alleged a number of facts suggesting that he was denied a bus pass for other reasons relating to his application form. Nor has Mr. Latham alleged facts that plausibly suggest that he is being denied weekend bus service as a result of his race or that he is being harassed by Defendants' employees on the basis of race. Because the FAC does not contain factual allegations, which if accepted as true, would state a plausible claim for relief under Title VI, the Court will dismiss Count 2.[94] The Court finds that any attempt to amend the complaint to state a Title VI claim would contradict the original allegations and would be futile. Therefore, the dismissal of Count 2 will be with prejudice.

---

[92] Docket 31 at 26–27.

[93] Docket 41 at 4.

[94] *See, e.g., Joseph v. Boise State Univ.*, 998 F. Supp. 2d 928, 944 (D. Idaho 2014) ("A motion to dismiss a Title VI claim is appropriate where a plaintiff fails to allege any evidence to indicate racial bias motivated a defendant's action and the allegations made support a finding that alleged bias was not racial in nature.").

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 25 of 40

## V.    Title VII of the Civil Rights Act

In Counts 6 and 7, Mr. Latham alleges that Defendants violated Title VII of the Civil Rights Act of 1964.[95]

"Title VII imposes liability for discrimination on 'employer[s].'"[96]  Mr. Latham has not alleged that he is or has been in an employment relationship with any of the Defendants.  Therefore, Mr. Latham has failed to state a claim for relief under Title VII and Counts 6 and 7.  The Court finds that any attempt at amending the complaint to try to state a Title VII claim would contradict the original allegations and be futile.  Accordingly, these counts will be dismissed with prejudice.

## VI.    Title I of the Workforce Investment Act of 1998

In Count 5 of the FAC, Mr. Latham alleges that Defendants violated Title I of the Workforce Investment Act of 1998.  However, that Act has since been repealed.  Therefore,  Count 5 will be dismissed with prejudice.[97]

//

//

//

---

[95] Docket 25 at 24 (alleging violation of 42 U.S.C. § 2000e-16) and Docket 25 at 24 (alleging violation of 42 U.S.C. § 2000e-5).  Although Count 7 references the ADA, it cites to a portion of the U.S. code of Title VII of the Civil Rights Act of 1964.  Because Mr. Latham has separately alleged ADA claims, the Court construes Count 7 as alleging violations of Title VII.

[96] *EEOC v. Glob. Horizons, Inc.*, 915 F.3d 631, 633 (9th Cir. 2019).

[97] The Workforce Innovation and Opportunity Act (113 P.L. 128) replaced the Workforce Investment Act of 1998.

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 26 of 40

Case 3:19-cv-00258-SLG   Document 52   Filed 10/09/20   Page 26 of 40

## VII. 42 U.S.C. § 1981

In Count 14, Mr. Latham alleges that Defendants violated 42 U.S.C. § 1981(a), which provides:

> All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Defendants contend that Mr. Latham "does not claim that he was denied a bus pass *because* he is white," and that "it is unclear whether § 1981 even applies" since a "Half Fare bus pass is not a 'contract.'"[98]  With respect to the Eagle River bus route, Defendants maintain that bus service is "not a contractual relationship" and that "bus service is unavailable to *everyone* in Eagle River on the weekends . . . ."[99]

In response, Mr. Latham states that he "has been and will continually be denied to receive a reduced fare Bus Pass due to his status as a heterosexual Caucasian adult Male mentally Disabled. . . ."[100]

Section 1981 prohibits intentional race discrimination.[101]  "To prevail [on a Section 1981 claim], a plaintiff must initially plead and ultimately prove that, but for

---

[98] Docket 31 at 17 (emphasis in original).

[99] Docket 31 at 18 (emphasis in original).

[100] Docket 41 at 9.

[101] *See Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 389 (1982).

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 27 of 40

race, [he] would not have suffered the loss of a legally protected right."[102]   The FAC is devoid of any factual allegations that indicate or even suggest that Mr. Latham did not receive a Half Fare pass because he is Caucasian; indeed, he has alleged facts suggesting that he was denied the pass due to the responses in his application.

Because the FAC does not contain sufficient factual matter, accepted as true, to state a Section 1981 claim that is plausible on its face, the Court will dismiss Mr. Latham's claims under Count 14.  The Court finds that any attempt at amending the complaint to try to state a Section 1981 claim would contradict the original allegations and would be futile.  Therefore, the dismissal of Count 14 will be with prejudice.

### VIII.   42 U.S.C. § 1983

Mr. Latham alleges a violation of 42 U.S.C. § 1983 in Count 15, asserting that his "Constitutional Due Process and equal Protection Right under the 14th Amendment . . . is being and will continue to be denied and violated by defendants."[103]

Defendants maintain that Mr. Latham only challenges the Half Fare Program on the basis that the questions are vague and led his doctor to answer them

---

[102] *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S.Ct. 1009, 1019 (2020).

[103] Docket 25 at 29–30.

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 28 of 40

Case 3:19-cv-00258-SLG   Document 52   Filed 10/09/20   Page 28 of 40

incorrectly and that Mr. Latham has not stated that he was "treated any differently than any other Eagle River resident" in being denied weekend bus service.[104] Defendants contend that to the extent Mr. Latham's claims are based on violations of the ADA and RA, Ninth Circuit jurisprudence precludes Mr. Latham from asserting such claims in a § 1983 cause of action against individual defendants.[105] They add that there is no *respondeat superior* liability under § 1983 and that Mr. Latham would have to demonstrate as to each Defendant that he or she personally participated in the deprivation of his rights.[106] With respect to the MOA, Defendants contend that Mr. Latham must identify a municipal policy, custom, or practice that led to his constitutional injury, and he has not done so; therefore, he has failed led to state a claim against the MOA under § 1983.[107]

In his opposition, Mr. Latham contends that there are "a great number of mentally ill clients that . . . have been denied a Reduced Fare Bus Pass because of the ambiguous question in the . . . questionnaire," referring to the question that asks whether the applicant's condition affects their ability to ride the bus.[108] Separately, Mr. Latham contends that the People Mover sells a 30-day bus pass

---

[104] Docket 31 at 23.

[105] Docket 31 at 20 (citing *Vinson*, 288 F.3d 1145).

[106] Docket 31 at 20–21 (citing *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002)).

[107] Docket 31 at 24 (citing *Bd. of the Cty. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997)).

[108] Docket 41 at 8.

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 29 of 40

Case 3:19-cv-00258-SLG   Document 52   Filed 10/09/20   Page 29 of 40

for $60 but stopped weekend service between Eagle River and Anchorage without compensating him.[109]

It is well-established that "Section 1983 does not confer rights, but instead allows individuals to enforce rights contained in the United States Constitution and defined by federal laws."[110] Because the Court has already considered and dismissed Mr. Latham's claims under the ADA, RA, and the Civil Rights Act, it need not consider whether Mr. Latham may bring § 1983 claims for those violations. However, the Court will consider Mr. Latham's claims of violations of the Due Process Clause and the Equal Protection Clause of the 14th Amendment.

Mr. Latham does not allege any factual basis for a claim of due process or equal protection violations by individual defendants Jamie Acton, Will Brown, and Sandy James. Therefore, the Court will dismiss these claims against them.[111] The Court now turns to Mr. Latham's constitutional claims against the MOA.[112]

### 1. Due Process Clause

---

[109] Docket 41 at 10.

[110] *Vinson*, 288 F.3d at 1155.

[111] In § 1983 suits, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

[112] With respect to the MOA, to "prevail on a claim against a municipal entity for a constitutional violation, a plaintiff must show that an official's action that caused the plaintiff's injury was pursuant 'to official municipal policy of some nature.'" *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 793 (9th Cir. 2016) (en banc) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 30 of 40

Case 3:19-cv-00258-SLG   Document 52   Filed 10/09/20   Page 30 of 40

The Due Process Clause of the Fourteenth Amendment guarantees that no State "shall . . . deprive any person of life, liberty, or property, without due process of law."[113] "A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."[114] "The property interests that due process protects extend beyond tangible property and include anything to which a plaintiff has a 'legitimate claim of entitlement.'"[115] "A mere 'unilateral expectation' of a benefit or privilege is insufficient . . . ."[116] Instead, "[p]rotected property interests derive from 'an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'"[117]

The Court finds that Mr. Latham does not have a constitutionally protected property interest in bus transportation from Eagle River to Anchorage on the weekends or in a Half Fare bus pass. Mr. Latham has not asserted or cited an independent source of law or otherwise alleged that he has a legitimate claim of

---

[113] U.S. Const. amend. 14, § 1.

[114] *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

[115] *Nozzi v. Hous. Auth. of City of L.A.*, 806 F.3d 1178, 1191 (9th Cir. 2015), *as amended on denial of reh'g and reh'g en banc* (Jan. 29, 2016) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576–77 (1972)).

[116] *Nunez v. City of Los Angeles*, 147 F.3d 867, 872 (9th Cir. 1998) (quoting *Roth*, 408 U.S. at 577).

[117] *Fed. Home Loan Mortg. Corp. v. SFR Invs. Pool 1, LLC*, 893 F.3d 1136, 1147 (9th Cir. 2018) (quoting *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005)).

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 31 of 40

Case 3:19-cv-00258-SLG   Document 52   Filed 10/09/20   Page 31 of 40

entitlement to weekend bus service or to a reduced fare bus pass, much less that he was deprived of it without due process.[118]

The Court has considered whether Mr. Latham could have a property interest in some portion of the amount he paid for his monthly pass. For instance, in *Ward v. Housasonic Area Regional Transit District*, the District Court of Connecticut recognized a property interest in a portion of the fee that the plaintiff paid for a fast pass before he was suspended from using the bus service entirely after a shouting match with a driver.[119] The district court ultimately concluded that the plaintiff had waived his property interest when he indicated that he did not want a refund.[120] Mr. Latham contends in his opposition that the MOA sells a "People Mover 30 day Bus Pass for $60.00 but since the People Mover stopped the Weekend Services from Eagle River to Anchorage" it is "b]ad faith" for the MOA to "deny[] Mr. Latham Weekend Services without being compensated for it."[121] However, nowhere in the FAC does Mr. Latham allege that he had a Half Fare bus

---

[118] *See, e.g., Ward v. Housasonic Area Reg'l Transit Dist.*, 154 F. Supp. 2d 339, 347–48 (D. Conn. 2001) ("The court is unable to find that [plaintiff] has a property interest in riding the bus and, therefore, holds that he was not entitled to due process regarding his bus suspension."). Similarly, while Mr. Latham alleges that he is being denied "access to jobs, public accommodations, government services, public transportation and access to the State and Federal Courts on the weekends," the lack of weekend bus service does not ban him from maintaining employment or from accessing the courts, and therefore does not implicate those interests. Docket 25 at 13.

[119] *Ward,* 154 F. Supp. 2d at 350 ("Ward does have a property interest in at least some portion of the $19.50 he paid for the fast pass.").

[120] *Id.*

[121] Docket 41 at 10.

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 32 of 40

Case 3:19-cv-00258-SLG   Document 52   Filed 10/09/20   Page 32 of 40

pass when weekend Eagle River bus service was abruptly suspended without prior notice.[122] Thus, unlike the plaintiff in *Housatonic*, Mr. Latham has not alleged facts that show that he was deprived of a portion of the fee that he paid for his pass. Moreover, he has not alleged that he was deprived of it without adequate procedural protections.

Because the FAC does not state a plausible due process claim, those claims will be dismissed. Further, the Court finds that any attempt at amending the complaint to try to state a due process claim would contradict the original allegations and be futile. Therefore, the dismissal of these claims will be with prejudice.

### 2. Equal Protection Clause

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."[123] Here, the FAC alleges that all

---

[122] Pursuant to Fed. R. Civ. P. 201(b), the Court takes judicial notice of the 2009 and 2010 People Mover Ride Guides, available at https://perma.cc/BBM9-4FYG and https://perma.cc/BM9V-5G5Q, as well as the People Mover Service Changes information page, https://www.muni.org/Departments/transit/PeopleMover/Pages/Public%20Transportation%20Service%20Change.aspx. According to these sources, the MOA removed weekend bus service from Eagle River between 2009 and 2010. Moreover, the sources show that People Mover service changes occur annually, typically in summer, and only after public meetings to gather comments. Based on the foregoing, the Court concludes that Mr. Latham will not be able to amend the FAC to state a claim upon which relief could be granted under the due process clause.

[123] *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (quotation marks and citation omitted) (rejecting equal protection claim where inmate failed to show that he was treated

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 33 of 40

residents of Eagle River have been equally deprived of weekend bus service, and that Mr. Latham was refused access to the Half Fare Program based on his doctor's answers on Mr. Latham's application form. Because Mr. Latham has not alleged that Defendants acted with an intent or purpose to discriminate against him based on his membership in a protected class, the Court will dismiss Mr. Latham's equal protection claims. The Court finds that any attempt to amend the complaint to try to state a claim upon which relief could be granted in connection with the lack of weekend bus service would be futile; therefore, the Court will dismiss those claims with prejudice. The Court will dismiss Mr. Latham's equal protection claims with respect to the Half Fare program without prejudice and with leave to amend.[124]

## IX. State Constitutional Claims

Throughout the FAC, Mr. Latham alleges violation of his due process rights under Alaska Constitution Article 1, Section 7 and of his equal protection rights under Article 1, Section 1.[125]

---

differently than any other inmates in the relevant class).

[124] Disability is not a suspect class for equal protection purposes. *See Pierce v. Cty. of Orange*, 526 F.3d 1190, 1225 (9th Cir. 2008). Therefore, to the extent that Mr. Latham seeks to amend the FAC to challenge the Half Fare Program's eligibility criteria, he must establish that the distinction drawn between eligible and ineligible persons with disabilities has no rational basis. *See, e.g., Williams v. Resler*, Case No.: 3:16-cv-02538-CAB-KSC, 2017 WL 6507101, at *3 (S.D. Cal. Dec. 18, 2017).

[125] *See, e.g.,* Docket 25 at 30.

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 34 of 40

Case 3:19-cv-00258-SLG   Document 52   Filed 10/09/20   Page 34 of 40

Defendants contend that there is "no individual claim for violation of the Alaska Constitution" except in cases of egregious constitutional violations.[126] Indeed, the Alaska Supreme Court has repeatedly held that it "will not imply a private cause of action for damages under the Alaska Constitution 'except in cases of flagrant constitutional violations where little or no alternative remedies are available.'"[127] The Court finds that the FAC does not allege flagrant constitutional violations and that alternative remedies were available to Mr. Latham.[128] Therefore, Mr. Latham's claims for damages arising under the Alaska Constitution will be dismissed. The Court finds that any attempt to amend the complaint to try to state such a claim would be contradict the original allegations and would be futile. Therefore, the Court will dismiss the state law damages claims with prejudice.

However, the Alaska Supreme Court's holding is limited to claims for monetary damages. Thus, the Court considers next whether Mr. Latham has plausibly alleged a claim for injunctive relief pursuant to the Alaska Constitution.[129]

---

[126] Docket 31 at 24.

[127] *Larson v. State*, 284 P.3d 1, 10 (Alaska 2012) (quoting *Hertz v. Beach*, 211 P.3d 668, 677 n.12 (Alaska 2009)).

[128] *See, e.g. Lum v. Koles*, 314 P.3d 546, 557 (Alaska 2013) (holding that because plaintiff could have brought a 42 U.S.C. § 1983 claim or a common law trespass claim "these alternative remedies preclude a suit for damages under the Alaska Constitution").

[129] *Id.* ("We have previously recognized that injunctive relief is an 'available and appropriate remedy' for violations under the state constitution, even where a *Bivens* claim for damages is unavailable.").

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 35 of 40

Case 3:19-cv-00258-SLG   Document 52   Filed 10/09/20   Page 35 of 40

### a. Equal Protection

Article 1, Section 1 of the Alaska Constitution "mandates 'equal treatment of those similarly situated'; it protects Alaskans' right to non-discriminatory treatment more robustly than does the federal equal protection clause."[130] A "person or group asserting an equal protection violation must demonstrate that the challenged law treats similarly situated persons differently. Absent disparate treatment of similarly situated persons, the law as applied to the aggrieved group does not violate the group's right to equal protection."[131]

Mr. Latham has not alleged that the MOA's programs and policies treat similarly situated persons differently. As discussed above, the FAC alleges that all residents of Eagle River were similarly deprived of weekend bus service, and that Mr. Latham was denied access to the Half Fare Program based on his doctor's answers on his application form. The Court finds that any attempt to amend the complaint to try to state a state law claim for injunctive relief in connection with the lack of weekend bus service would be futile. Therefore, the Court will dismiss these claims with prejudice. The Court will dismiss Mr. Latham's equal protection

---

[130] *State, Dep't of Health & Soc. Servs. v. Planned Parenthood of Alaska, Inc.*, 28 P.3d 904, 909 (Alaska 2001) (footnote omitted) (quoting *Alaska Pac. Assurance Co. v. Brown*, 687 P.2d 264, 271 (Alaska 1984)).

[131] *Alaska Civ. Liberties Union v. State*, 122 P.3d 781, 787 (Alaska 2005) (footnote omitted).

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 36 of 40

claims with respect to the Half Fare Program without prejudice and with leave to amend, but solely as to injunctive relief.[132]

### b. Due Process

The Alaska Constitution also provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law."[133]  "A due process claimant must prove the existence of 'state action and the deprivation of an individual interest of sufficient importance to warrant constitutional protection.'"[134]  Like the United States Constitution, the Alaska Constitution protects property rights.[135]  As discussed above, the Supreme Court has held that "[p]roperty interests . . . are not created by the Constitution . . . they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."[136]  "Alaska has adopted this same 'claims of entitlement' test for property rights protected by the Alaska Constitution.  Under this test, property rights can arise from both statutes and contracts."[137]

---

[132] *See* n.124, *supra*.

[133] Alaska Const. art. I, § 7.

[134] *Anderson v. Alaska Hous. Fin. Corp.*, 462 P.3d 19, 25 (Alaska 2020) (quoting *Dennis O. v. Stephanie O.*, 393 P.3d 401, 406 (Alaska 2017)).

[135] *Hertz v. State, Dep't of Corr.*, 230 P.3d 663, 668 (Alaska 2010).

[136] *Roth*, 408 U.S. at 577.

[137] *Hertz*, 230 P.3d at 668.

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 37 of 40

Case 3:19-cv-00258-SLG   Document 52   Filed 10/09/20   Page 37 of 40

As discussed above, the Court finds that Mr. Latham does not have a protected property interest in transportation from Eagle River to Anchorage on the weekends or participation in the Half Fare Program. Because the FAC does not state a claim upon which relief can be granted, the Court will dismiss Mr. Latham's due process claims under the Alaska Constitution. The Court finds that any attempt at amending the complaint to try to state such a claim upon would be futile. Therefore, the dismissal of the state due process claims will be with prejudice.

### c. Discretionary Function Immunity

Defendants contend that "bus routes are subject to discretionary function immunity" pursuant to AS 09.65.070.[138] Because AS 09.65.070 applies to actions for damages and the Court has already dismissed Mr. Latham's state constitutional claims for damages, it does not address Defendants' invocation of AS 09.65.070.[139]

### X. Eighth Amendment

Defendants contend that to the extent Mr. Latham is alleging cruel and unusual punishment, that claim must be dismissed because it is "a constitutional

---

[138] Docket 31 at 4.

[139] AS 09.65.070 provides, in part, that:

(d) An action for damages may not be brought against a municipality or any of its agents, officers, or employees if the claim . . . (2) is based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty by a municipality or its agents, officers, or employees, whether or not the discretion involved is abused . . . .

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 38 of 40

right applied in a criminal justice context where punishment is meted out to a defendant convicted of a crime."[140]

The FAC does not allege any facts indicating that Mr. Latham is involved in the criminal justice system or that he has suffered cruel and unusual punishment in any form.[141] Mr. Latham has not stated a claim under the Eighth Amendment's cruel and unusual punishment clause and any attempt at amending the complaint to try to state such a claim would be futile. Therefore, to the extent Mr. Latham attempted to state an Eighth Amendment claim, it will be dismissed with prejudice.

## CONCLUSION

In light of the foregoing, Defendants' Motion to Dismiss at Docket 31 is GRANTED and Mr. Latham's claims are DISMISSED as follows:

- Mr. Latham's federal equal protection claims under 42 U.S.C. § 1983 arising from the Half Fare program are DISMISSED WITHOUT PREJUDICE;

- Mr. Latham's state equal protection claims for injunctive relief under Article 1, § 1 of the Alaska Constitution arising from the Half Fare program are DISMISSED WITHOUT PREJUDICE; and

- All of Mr. Latham's other claims arising under both state and federal law are DISMISSED WITH PREJUDICE.

---

[140] Docket 31 at 36 (citing *Furman v. Georgia*, 408 U.S. 238 (1972)).

[141] The only reference in the FAC to the cruel and unusual punishment is in the damages section. See Docket 25 at 32.

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 39 of 40

The Court further orders that:

- Mr. Latham has until **November 10, 2020** to file one of the following:

  a. <u>Amended Complaint</u>, in which Mr. Latham would only pursue the claims that were dismissed **<u>without</u>** prejudice (limited to Mr. Latham's federal and state equal protection claims made in connection with the Half Fare program) after correcting the deficiencies in accordance with this order. An amended complaint would replace the current complaint in its entirety.[142] Mr. Latham must include all of the claims he seeks to bring, but he shall NOT include any claims that have been dismissed with prejudice; <u>OR</u>

  b. <u>Notice of Voluntary Dismissal</u>, which would inform the Court that Mr. Latham no longer seeks to pursue this lawsuit and would dismiss the entire action.

- If Mr. Latham does not file either an Amended Complaint or Notice of Voluntary Dismissal by **November 10, 2020,** this case will be DISMISSED WITH PREJUDICE under 28 U.S.C. § 1915(e)(2)(B).

DATED this 9th day of October, 2020 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[142] *See* Fed. R. Civ. P. 15; Local Civil Rule 15.1.

Case No. 3:19-cv-00258-SLG, *Latham v. Acton, et al.*
Order re Motion to Dismiss
Page 40 of 40

Case 3:19-cv-00258-SLG   Document 52   Filed 10/09/20   Page 40 of 40